UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

PAULETTE JONES,

                    Plaintiff,              09 Civ. 4815

   -against-                       OPINION

NEW YORK CITY BOARD OF EDUCATION,
BRIAN KAPLAN, GERRI COOKLER, JEAN
McTAVISH, DAVID BRODSKY, MARCEL
KSHENSKY, ALEX TARE, and SUSAN
MANDEL,

                    Defendants.

------------------------------------X

A P P E A R A N C E S:

              Attorneys for Plaintiff

              LAW OFFICES OF AMBROSE W. WOTORSON, P.C.
              26 Court Street
              Brooklyn, NY  11201
              By:  Ambrose Wotorson, Esq.

              Attorneys for Defendants

              MICHAEL A. CARDOZO
              Corporation Counsel of the City of New York
              100 Church Street
              New York, NY  10007
              By:  Jane E. Andersen, Esq.

**Sweet, D.J.**

The defendants New York City Board of Education ("BOE"), Brian Kaplan ("Kaplan"), Gerri Cookler ("Cookler"), Jean McTavish ("McTavish"), David Brodsky ("Brodsky"), Marcel Kshensky ("Kshensky"), Alex Tare ("Tare") and Susan Mandel ("Mandel" and, collectively with BOE, Kaplan, Cookler, McTavish, Brodsky, Kshensky and Tare, the "Defendants") have moved pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing the amended complaint (the "Amended Complaint") of the plaintiff Paulette Jones ("Jones," or the "Plaintiff").  The Amended Complaint, which pleads violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"), alleges that the Defendants discriminated against Jones on the basis of race and age and retaliated against Jones when she complained about the discrimination.

On the facts and conclusions set forth below, the Defendants' motion for summary judgment is granted, and the Amended Complaint is dismissed.

**Prior Proceedings**

1

Jones filed her initial complaint on May 22, 2009 and the Amended Complaint on September 2, 2009.  The Amended Complaint alleges that Jones was discriminated against when she was assigned to work with students taking the GED predictor tests, that the increase of duties in this area coupled with a decrease in her duties involving the counseling of students diminished her professional responsibilities.  Jones further alleges that she was retaliated against for complaining about discrimination by not being timely paid for her work during the summer of 2008 and by being denied a summer position in 2009.

On June 9, 2011, the Defendants moved for summary judgment.  After argument was delayed by stipulation of the parties, the motion was heard and marked fully submitted on November 1, 2011.

**The Facts**

The facts are set forth in the Defendants' Local Rule 56.1 Statement and the Plaintiff's 56.1 Statement and are not in dispute except as noted below.

The Plaintiff self-identifies as African-American, and her date of birth is August 14, 1946.  She began her employment

2

at the BOE in or around January 1981, as a special education
teacher.  In or around January 1997, the Plaintiff became
employed in the title of guidance counselor and served in that
title until her retirement in September 2010.  According to the
Plaintiff, Jones also taught special education high school
students in the Manhattan district for seventeen years before
becoming a guidance counselor/related services counselor.  To be
a guidance counselor, one must have sixty master's credits in
counseling, permanent certification and no unsatisfactory
ratings.  When the Plaintiff first became employed as a guidance
counselor for the BOE, she was assigned to work in multiple
schools during a school year, and her supervisor was a licensed
master social worker.  In the fall of 1998, Plaintiff was
granted a seniority transfer to the Edward A. Reynolds West Side
High School ("West Side High School") as a guidance
counselor/related service counselor.

In 2003, the BOE reorganized, the Plaintiff was
assigned directly to West Side High School and the Plaintiff's
supervisor became the school's principal.  McTavish has served
as the principal at West Side High School from 2001 to the
present and was Plaintiff's rating officer from 2003 until 2010.
At all times, McTavish rated the Plaintiff's performance as
satisfactory.  At no time during the Plaintiff's employment at

3

West Side High School did the Plaintiff ever receive
disciplinary charges, a reprimand, a negative employment
evaluation or a negative letter to her personnel file.

West Side High School is an alternative high school.
The students who attend West Side High School are between the
ages of seventeen and twenty-one, and have been unsuccessful at
other high schools, often times due to very serious life
circumstances that have prevented them from graduating.
Pursuant to New York State law, a student may only attend high
school until the age of twenty-one, or until they obtain a high
school diploma or a General Educational Development ("GED")
diploma.

An Individualized Education Program ("IEP") is
required for any student who has a disability.  A student's IEP
mandates what services are required to be offered by the school.
Many of the students at West Side High School are mandated to
have counseling services for psychological or other serious
emotional problems ("mandated students").  In addition, non-
mandated students also have access to the school's counseling
services.  While social workers and guidance counselors have
different licenses, they are both able to provide counseling
services to mandated and non-mandated students.

4

After the BOE reorganized in 2003, West Side High School employed one other guidance counselor in addition to the Plaintiff, Rita Zweifach ("Zweifach"), and one social worker, Linda Salazar ("Salazar").  McTavish hired a second social worker, Delores Rivers ("Rivers").  McTavish knew Rivers because she had hired her when she was an Assistant Principal at the BOE's Project BLEND and worked with her there for a number of years.  The race of Rivers is African-American, and she was born in the year 1955.  According to the Defendants, while the Plaintiff and Salazar continued to see mandated students after 2003, Rivers had the largest caseload of mandated students for counseling services.

According to the Plaintiff, in January 2003, McTavish attempted to replace Jones with Rivers, who is younger and has four years' experience, telling the Plaintiff that she did not want the Plaintiff at the West Side High School.  Subsequently in 2003, McTavish began ordering the Plaintiff to administer GED predictor tests.  According to the Defendants, soon after the BOE's reorganization in 2003, the Plaintiff, on her own initiative, began providing students the opportunity to take the GED predictor test, which provides students with an opportunity to practice the GED exam to determine whether they are prepared

to take the exam, and to help identify the areas in which
students need to focus further study. The Plaintiff has denied
this assertion and has stated that, in 2003, McTavish began
ordering the Plaintiff to administer GED predictor tests. The
Plaintiff states that she did not administer the GED test in
advising students and was following McTavish's orders to test
students and score the tests. According to the Plaintiff, Jones
rarely discussed the exam and/or after school plans with the
students.

Once GED after school classes began, McTavish reduced
the Plaintiff's caseload of mandated students. The Plaintiff
alleges that, in 2003, Jones had approximately twenty to thirty
mandated students in her guidance counselor/related services
position. However, by 2007, Jones had only ten to fifteen
mandated students. In September 2009, the Plaintiff
administered 379 GED sessions and by June 2010, the Plaintiff's
mandated student caseload was reduced to two students.

According to the Defendants, McTavish believed that
the Plaintiff provided a very valuable service to the students
at West Side High School, and she encouraged Plaintiff to work
with students to prepare for the GED test. The Plaintiff has
denied this assertion. The Defendants state that the Plaintiff

was successful in working with students to take the GED
predictor exam and worked hard to ensure that the students would
sign up and attend the GED official exam.  The Plaintiff denies
that she worked hard to ensure that the students would take the
exam, instead stating that her responsibilities included simply
administering and grading the exam and telling students their
scores.  According to the Defendants, guidance counselors,
unlike social workers, may also be assigned to help students in
other areas aimed at their academic success, which may include
such things as helping students with their course schedules and
counseling students with their post-graduation plans.

      According to the Defendants, in September 2006,
Salazar left West Side High School, and McTavish hired two
social workers to replace her, Beth Bitton ("Bitton") and
Jeffrey Fennely ("Fennely").  Bitton had been a social worker at
the Ryan Center and previously worked as an intern at West Side
High School.  The Ryan Center is a school-based health clinic,
and the students at the Ryan Center are faced with many of the
same challenges as the students at West Side High School face.
Fennely had been highly recommended by a former colleague of
McTavish's, and had previously worked at the Children's Aide
Society, a community based organization to which students are
referred to meet a student's counseling needs.  Britton and

Fennelly, who had been at West Side High School for less than
five years, were both assigned to handle special education
students, whom the Plaintiff previously handled.  According to
the Plaintiff, the decision to transfer the Plaintiff's special
education mandated students to social workers was done without
any notice to the Plaintiff, who noticed that she was getting
fewer special education mandate students and doing more GED
testing.  The Plaintiff alleges that there were other guidance
related duties to which could have been assigned to the
Plaintiff.

In 2006, Zweifach retired.  According to the
Defendants, at all times since 2006, West Side High School has
employed only one guidance counselor, the Plaintiff.  West Side
High School has continued to support two to three social work
interns each year from local universities, who counseled
students under the supervision of one of the West Side High
School social workers.  According to the Plaintiff, at the time
of her employment, Jones was the only permanent African-American
certified counselor and licensed mental health counselor at West
Side High School.  The Plaintiff alleges that the assignment of
GED testing responsibilities limited the Plaintiff's
opportunities to address the general guidance counselor skills
needed in more affluent schools.  As a result, the Plaintiff

8

states that she was deprived of using her counseling skills.
Furthermore, the Plaintiff alleges that she was unable to hone
basic and important computer skills possessed by other guidance
counselors, and her schedule prevented her from applying for per
session work because she was working 8am to 5pm and could not
attend educational and workshop meetings that would have
enhanced her professional knowledge.

According to the Defendants, while both the Plaintiff
and West Side High School's social workers had been providing
counseling to mandated students, McTavish believed that the
students who attend West Side High School are better served when
they are provided counseling from a social worker, as opposed to
a guidance counselor.  The Defendants claim that McTavish
believes that guidance counselors and social workers take
different approaches when counseling students.  Based on her
personal observations, McTavish believes that social workers are
better able to work with students to find solutions to their
problems, permitting the students to perform better at school.
Social workers, according to McTavish, take a more holistic
approach to the student's needs and confront issues more
directly with the students.  The Plaintiff has denied these
assertions.

9

According to the Plaintiff, pursuant to Article 7
Section B of the Department of Education Guidance Counselor
Agreement, "Counselors shall not be required to schedule and
administer large-scale testing programs or to score and record
test data resulting from such programs...."  In addition to
being barred from administering, grading, and scoring tests,
"counselors shall not given any administrative assignments such
as but not limited to lunch, hall, bus, or yard duty."  The
Plaintiff states that Angela Reformato ("Reformato"), who worked
in a GED after school program, has more than 32 years of service
and is familiar with GED programs, testified during a grievance
hearing on December 12, 2008 that GED testing is a job done by a
school aide.  According to the Plaintiff, Jones has attended to
a series of additional administrative duties associated with
administering the GED exam including, but not limited to,
answering phone inquiries, copying, faxing and responding to
staff members' inquiries concerning the GED status of their
students.

In or around September 2007, the Plaintiff attended a
meeting where she spoke to Cookler, who the Plaintiff testified
introduced herself as a guidance counselor content expert for
the BOE.  When asked during her deposition what she said to
Cookler, the Plaintiff testified:

10

> I was concerned that I'm doing a lot of GED testing
> and not dealing with my mandated students and
> [Cookler] stated that [she] would be willing to come
> to schools and I said that I think that it's very
> important that [Cookler] come to this school and let
> them know that [plaintiff's job duties of GED testing]
> is very dangerous and its' really out of compliance.

After not hearing from Cookler, the Plaintiff testified that she

contacted Cookler's superior, Kaplan.  In an email dated

February 4, 2008, Kaplan, who, at the time served as senior

youth development director of the Manhattan Integrated Service

Center, sent an email to the Plaintiff, which stated in part:

> From your voice mail, it seems that you think you're
> being asked to do something out of your license and/or
> contractual area.
>
> Related service provider is not a license or specific,
> defined role in a school.  If you're hired as a GC
> [guidance counselor] or a SW [social worker], that's
> what your role is.  If you're working with mandated
> counseling students, that's part of the role of a GC
> or SW.  Sometimes principals hire GC's and/or SW's to
> work solely within the role of related service
> provider, however this does not preclude your working
> in other areas that GC's and/or SE's do.

In response to the Plaintiff's request, on February

26, 2008, Kaplan and Cookler met with the Plaintiff at West Side

High School.  Kaplan testified that it was his usual practice to

provide a guidance counselor with his observations and

11

recommendations after meeting with a school guidance counselor.
In an email to the Plaintiff dated February 28, 2008, Kaplan
expressed "a number of serious concerns about the role of
guidance consoler services at West Side High School," and
detailed his concerns.  The email stated "Your [plaintiff] role
in providing much needed guidance services related to the GED
program at [West Side High School] is noted by the principal as
being exemplary.  This is applauded and seems to be your niche
at the school. We congratulate you and thank you on behalf of
all the students you have served, are serving, and continue to
serve."

        The Plaintiff filed a complaint with the United States
Equal Employment Opportunity Commission ("EEOC"), dated March 1,
2008.  According to the Plaintiff, as a result of filing a
complaint of discrimination, she was not paid for her work
during summer school in 2008 until she filed a grievance.

        According to the Defendants, each summer, West Side
High School is provided with a personnel budget.  McTavish does
not utilize counseling services during summer school and instead
chooses to allocate the school's resources to hiring teachers
and as few administrative support positions as possible.  As
such, West Side High School did not have any vacancies for the

position of guidance counselor or social worker during the
summer of 2008.  The Defendants state that at the beginning of
the summer 2008 session, McTavish was informed that the
Plaintiff was told to report to West Side High School to work
because she had what is known as "retention rights" to work per
session during the summer.  Retention rights guarantee certain
employees, based upon seniority, to be paid for summer school
permitting they apply, whether or not they are accepted for a
summer school vacancy.  The Plaintiff was not to be paid from
West Side High School's budget for the summer session because
West Side High School was not budgeted for the position of
guidance counselor.  Instead, funding had to be transferred to
the school's account from BOE central so that the Plaintiff
could be paid.

       The Plaintiff has stated that at the beginning of the
summer of 2008, the Plaintiff was informed that she was to
report to West Side High School to work as a guidance counselor
during the summer session.  According to the Plaintiff, her
retention rights allowed her the right to work per session
during the summer.  The Plaintiff states that the funding issues
caused the Plaintiff not to be paid for her work during the
summer 2008 school session until October of 2008, thereby
causing her to incur excess interests on her credit cards and

13

bills.  According to the Plaintiff, she was the only African-American and the oldest worker who was not paid for the summer 2008 school session.

According to the Defendants, on July 29, 2008, the Plaintiff sent an email to Lauren Lewis ("Lewis") in BOE's Central Human Resources Department stating in part:

> You called me on July 2, [20]08 and told me by voicemail and followed by an email confirmation to report to [West Side High School] for my summer assignment.  I did on report July 2, [20]08.  However, today the payroll secretary Barnard MCGlockling (who also email you with the question who will pay my summer pay 7/21/08?) inform me checking the computer system there is no paycheck for me.  I would like to know if your office has paid me for July 1, 08 to July 15, 08.

In response to the Plaintiff's July 29, 2008 email, Lewis sent an email:  "Hello. I have check the summer school system to see if you responded in time.  You did not.  Please call me to discuss this matter."

The Plaintiff's union filed a grievance regarding her per session pay for summer school in 2008, which McTavish supported by stating at the grievance hearing that she believed the Plaintiff should be paid for the entire summer because she

14

worked for the entire summer. The Plaintiff has denied this assertion. The Plaintiff was fully paid in October 2008 for her work during summer school during the summer of 2008.

The Plaintiff also contends that she was denied employment during the summer of 2009. According to the Plaintiff, on June 25, 2009, Jones was offered the job of transition person, a "comp time" teaching position, but she refused the position because a transitional teacher is a teaching job that has a lower education requirement and salary that that of a guidance counselor. Jones has stated that during the summer 2009 session, she applied to work as a guidance counselor in a timely fashion and, notwithstanding the fact that she had retention rights, was not contacted regarding her summer assignment until August 7. Even though the final day of the summer 2009 session was August 14, the Plaintiff states that she still reported to her assignment on August 8. Jones contends that because she had retention rights, she was still entitled to payment for the entire summer. The Plaintiff was ultimately paid for the summer 2009 school session in October 2009. According to the Plaintiff, this delay in payment again caused her to incur excess interest charges on her credit accounts and bills.

15

The Plaintiff has filed two grievances pursuant to Article 7 of the applicable collective bargaining agreement ("CBA"), challenging her assignment to administrate the GED predictor test to students.  The first hearing occurred on November 12, 2008 when Chancellor's Representative Gary S. Laveman ("Laveman") presided and the Plaintiff, UFT Representative Jeffrey Huart, Reformato, Mandel and McTavish were all in attendance.  The Plaintiff and her union argued that the Plaintiff was required to administer GED predictor tests to students in violation of the CBA.  By decision dated November 18, 2008, the grievance was denied, both on procedural and substantive reasons.  Laveman found, in part:

> At no time was [plaintiff] required to schedule large-scale testing programs, such as Regents examinations, or to proctor or grade such examinations.  The occasional testing of students was done strictly for diagnostic purposes, which then enabled counselors, such as [plaintiff] to better advise students. Nothing is remiss in this.

On February 12, 2009, Chancellor's Representative Alex Tare presided over the second grievance, where the Plaintiff, UFT representative Danile Acosta, Kshensky and McTavish were in attendance.  The Plaintiff and her union argued that the Plaintiff was improperly assigned to administer the GED predictor test to a large number of students making it

16

impossible for the Plaintiff to perform her guidance duties.
Tare denied the grievance, finding in part:

> Administering the GED predictor test seems to be a
> reasonable duty for a high school guidance counselor.
> Further, Article 7 cited by the Union states
> "Counselors shall not be required to schedule and
> administer large-scale testing programs...."  That
> does not seem to be the case here.

Additionally, Tare noted that:

> [T]he Union brought this identical grievance on behalf
> of this same grievant three months ago.  That first
> grievance included the same complaint, the same cites
> Articles and the same request for relief as the
> present grievance.  That grievance was denied. The
> Union cannot grieve the same grievance on behalf of
> the same grievant time after time.  The Agreement
> provides an appropriate alternative for the Union to
> pursue if it is displeased with a Step II decision.

The Plaintiff has alleged in her Amended Complaint
that "the assignment forced on me as a GED tester since 2003 is
racial discrimination and age discrimination."  When asked at
her deposition why she believed the assignment to be
discriminatory, Plaintiff testified:

> I am African-American, I am the first and only
> African-American at this School.  And the other people
> were not given these tests in the school, and the
> other social workers were not given these tests.  The

17

younger Caucasian social workers did not give these tests. They were ordering me with the principal and attendance teacher to give these tests. They were ordering me with the principal and attendance teacher to give these tests.

When asked to explain her testimony that the Plaintiff was the "first and only African-American at this school," the Plaintiff testified that she is the only African-American guidance counselor at the school but testified that there are other African-American employees at the school, including Rivers. When asked whether there were other reasons the Plaintiff believes she was discriminated against, the Plaintiff testified that "it was the comments and the actions of younger Caucasian people giving me orders and when I said something they would run to the principal." With respect to her claim of race or age discrimination concerning her assignment to work with students interested in taking the GED predictor tests, the Plaintiff testified "the idea that I had lesser and lesser mandated students. I was like the old horse put out to pasture." The Plaintiff has alleged that "the lower status job as a 'GED Tester' forced on me is a violation of my contractual-guidance counselor contractual rights to due process and equal protections under the law."

18

After Plaintiff's retirement in September 2010,
McTavish hired Tyler Small ("Small") as the school's only
guidance counselor.  The race of Small is Caucasian, and he was
born in the year 1966.  Small was hired, and he took over the
responsibility to administer the GED predictor tests, in
addition to working with student programming, and helping
students with their schedules.  According to the Defendants, one
of the reasons McTavish hired Small was because he had
experience at his prior school in administering and counseling
students with regard to the GED predictor test.  The Plaintiff
has denied this assertion.  The Defendants claim that, while
Small is currently assigned eleven mandated students, the
majority of mandated students continue to work with the social
workers employed at West Side High School.  The Plaintiff has
denied this assertion.


**The Applicable Standard**


Claims of Title VII and ADEA discrimination are
analyzed under the burden-shifting framework set forth by the
Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792,
802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  See Woodman v.
WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (and cases cited
therein recognizing that the framework established by McDonnell

19

Douglas for Title VII claims of race discrimination also applies
to ADEA claims); see also Gorzynski v. Jetblue Airways Corp.,
596 F.3d 93, 110 (2d Cir. 2010).  To establish a prima facie
case of discrimination, Plaintiff must point to evidence in the
record showing that:  (1) she is a member of a protected class;
(2) she was qualified for her position; (3) she was subjected to
an adverse employment action; and (4) the adverse employment
action took place under circumstances giving rise to an
inference of discrimination based on Plaintiff's membership in
the protected class.  See Gorzynski, 596 F.3d at 107 (citing
Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir.
2000)); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502,
507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Stern v. Trs. of
Columbia Univ., 131 F.3d 305, 311-12 (2d Cir. 1997).

     If Plaintiff meets this burden of production with
respect to the prima facie case, then the burden shifts to the
employer to show that any adverse employment actions were taken
for legitimate, non-discriminatory reasons.  St. Mary's Honor
Ctr., 509 U.S. at 507.  Once the defendants produce such
evidence, "the presumption raised by the prima facie case is
rebutted, and drops from the case."  Id.  At that point, "the
governing standard is simply whether the evidence, taken as a
whole, is sufficient to support a reasonable inference that

prohibited discrimination occurred." James v. N.Y. Racing
Ass'n, 233 F.3d 149, 156 (2d Cir. 2000).  Once the employer has
demonstrated a legitimate, non-discriminatory reason for its
decision, the burden then shifts back to the plaintiff to
present evidence that the employer's proffered reason is a
pretext for an impermissible motivation. Vivenzio v. City of
Syracuse, 611 F.3d 98, 106 (2d Cir. 2010).  A plaintiff cannot
establish a prima facie case based on "purely conclusory
allegations of discrimination, absent any concrete particulars."
Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).


**The Defendants' Motion For Summary Judgment Is Granted With
Respect To All Claims Against The Individual Defendants**


          Plaintiff asserts claims under Title VII and ADEA
against individually named defendants Kaplan, Cookler, McTavish,
Brodsky, Kshensky, Tare and Mandel (collectively, the
"Individual Defendants").  The Second Circuit and this court
have held that Title VII and the ADEA only allow a cause of
action against an "employer." See Wrighten v. Glowski, 232 F.3d
119, 120 (2d Cir. 2000) (per curiam) ("The district court also
properly dismissed the Title VII claims . . . because
individuals are not subject to liability under Title VII."); see
also Healy v. AIG Tech. Servs. Inc., No. 00CIV3419(GBD), 2001 WL

21

336976, at *1 (S.D.N.Y. Jan. 10, 2001).  An "employer" is not
construed to mean a supervisor or other agent of the entity that
employs the plaintiff.  See Pasqualini v. MortgageIT, Inc., 498
F. Supp. 2d 659, 665 (S.D.N.Y. 2007) ("[I]t is established well
beyond the need for citation that this Court is without power to
overrule a decision of the Second Circuit, which has repeatedly
held that an employer's agent may not be held individually
liable under Title VII.") (citations omitted).  Because only an
employer, and not individuals, can be the defendant in a Title
VII or ADEA case, all claims against the Individual Defendants
must be dismissed.


        The Plaintiff, in opposition to the Defendants' motion
has invoked the jurisdiction of this court pursuant to 42 U.S.C.
§§ 1981 and 1983 to assert individual liability.  However,
because this is the first time the Plaintiff has asserted these
claims, it is tantamount to an amendment of the Amended
Complaint which at this stage is not permissible.  See Davis v.
City of New York Health & Hosps. Corp., No. 08 Civ. 0435(LAP),
2011 WL 4526135, at *1 n.1 (S.D.N.Y. Sept. 29, 2011) ("Plaintiff
concedes that she did not allege a cause of action under [the
Whistleblower Law] in the complaint but asks that her other
claims be construed to include one or that she be permitted to
amend. . . . As parties may not amend complaints by way of

22

summary judgment briefing, no claim under that section is before
the Court.") (citing Wright v. Ernst & Young LLP, 152 F.3d 169,
178 (2d Cir. 1998)); see also 49 WB, LLC v. Village of
Haverstraw, No. 08 CV 5784(VB), 2012 WL 336152, at *12 (S.D.N.Y.
Feb. 2, 2012) ("The complaint does not allege a conspiracy
including those non-parties, and the Court will not permit
plaintiff to amend its complaint in its opposition to summary
judgment.").

**The Defendants' Motion For Summary Judgment Concerning The
Plaintiff's Discrimination Claims Is Granted With Respect To All
Defendants**

In addition to the applicable precedent precluding the
Plaintiff's claims against the Individual Defendants, the
Defendants' summary judgment motion is granted with respect to
all Defendants because the Plaintiff has neither established a
prima facie case of discrimination, nor has the Plaintiff
presented evidence that the DOE's proffered reason for its
actions concerning Jones is pretext for an impermissible
motivation.

**A. The Plaintiff Has Failed To Establish A Prima Facie Case
Because There Is No Evidence That Jones Suffered An Adverse
Employment Action**

23

Plaintiff's additional job assignment to administer the GED test does not constitute an adverse employment action under Title VII or the ADEA.  An adverse employment action is a "materially adverse change in the terms and conditions of employment," something "more disruptive than a mere inconvenience or an alteration of job responsibilities" such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted).  As such, "a job re-assignment, without attendant materially adverse consequences, is not an adverse employment action."  Chandler v. AMR Am. Eagle Airline, 251 F. Supp. 2d 1173, 1183 (E.D.N.Y. 2003) (citing Galabya, 202 F.3d at 640.

The Plaintiff asserts that she suffered an adverse employment action as a result of the "diminution of Plaintiff's professional status."  The Plaintiff's support for this purported diminution is based solely on her own subjective feelings about the job duties assigned to her.  A change in an employees' job duties is not a sufficiently adverse change "unless the change is 'so unsuited to plaintiff's skills as to

24

constitute a setback to plaintiff's career,'" see Velasquez v. Gates, No. 08 CV 2215(CLP), 2011 WL 2181625, at *10 (E.D.N.Y. June 3, 2011) (citing Morrison v. Potter, 363 F. Supp.2d 586, 590 (S.D.N.Y. 2005)), and "a plaintiff's subjective feelings cannot be used to determine whether an employment action is adverse," see Islamic Soc'y of Fire Dep't Pers. v. City of New York, 205 F. Supp. 2d 75, 84 (E.D.N.Y. 2002) (citations omitted). Furthermore, a "bruised ego," a "demotion without change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or materially adverse employment action. See Burlington Indus. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

Here, the evidence establishes that the Plaintiff never received disciplinary charges, a reprimand, a negative employment evaluation, or a negative letter to her personnel file. The Plaintiff was not terminated, nor was her salary ever reduced, nor was she demoted. Instead, the Plaintiff complains about having to administer GED predictor tests to students, which the Plaintiff alleges diminished her responsibilities. However, although the Plaintiff's caseload of mandated students was reduced to permit her additional time to work with students to prepare for the GED test, she continued to be assigned to

25

mandated students throughout her tenure and was able to counsel
these students while fulfilling her job duties of counseling
students who were preparing for the GED exam.  As such, the
added job duties of counseling students who were interested in
taking the GED did not alter the terms and conditions of her
employment.  The Plaintiff continued to perform work in the
licensed area of guidance counselor.  The Plaintiff was the only
guidance counselor at West Side High School from 2006 until
2010, and the guidance counselor who was hired after Plaintiff
retired has the same job duties as plaintiff and approximately
the same number of mandated students.

### B. Even If A Prima Facie Case Is Assumed, The Plaintiff Has Failed To Present Evidence That The Defendants' Proffered Reasons For Jones' Reassignment Are Pretextual

Even if it is assumed that the Plaintiff has
established an adverse employment action, the Defendants' motion
for summary judgment must still be granted because the Plaintiff
has failed to present evidence that the Defendants' proffered
reasons for the change in Jones' duties are pretext for an
impermissible motivation.

As described above, under the McDonnell Douglas
analysis, a plaintiff must first establish a prima facie case of

26

discrimination. After the plaintiff has satisfied this initial
burden, the burden of going forward shifts to the defendant to
provide a legitimate non-discriminatory reasons for the adverse
employment action. See, e.g., Patterson v. County of Oneida,
375 F.3d 206, 221 (2d Cir. 2004). This showing must be
supported by admissible evidence that, if believed by the trier
of fact, would support a finding that unlawful discrimination
was not the cause of the employment action. The plaintiff then
has an opportunity to demonstrate that the defendant's reasons
were merely a pretext for discrimination. See id.

Here, the evidence the Plaintiff cites to establish a
prima facie case is that white social workers who were younger
than the Plaintiff were assigned the Plaintiff's counseling
duties; that McTavish allegedly attempted to remove the
Plaintiff, who was the only black guidance counselor, from West
Side High School; that McTavish often stated during morning
meetings that "we old people should just step back and let them
[younger professionals] take over;" and that when the Plaintiff
retired, McTavish hired Small, who is Caucasian and younger than
the Plaintiff, to serve as a guidance counselor at West Side
High School. Even if it is assumed that this evidence is
sufficient to establish a prima facie case of discrimination,
the Defendants have provided a legitimate non-discriminatory

27

reason for Jones' reassignment, and the Plaintiff has failed to demonstrate that the Defendants' reasons were merely a pretext for discrimination.

Assuming that the Plaintiff has established a prima facie case of discrimination, the Plaintiff's claims fail because the Defendants have articulated legitimate, nondiscriminatory reasons for the actions taken with regard to the Plaintiff. The Defendants' burden in this regard is minimal as they must merely provide some explanation for the actions Plaintiff alleges to be discriminatory. See Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999) ("The defendant's burden of production is also not a demanding one; she need only offer such an explanation for the employment decision."). The Defendants have contended that, although the Plaintiff had been counseling mandated students prior to McTavish becoming her direct supervisor, McTavish preferred to have social workers counsel mandated students. The Defendants further explain that soon after the Plaintiff was assigned to work at West Side High School full-time, the Plaintiff, on her own initiative, began providing West Side High School students the opportunity to take the GED predictor test. McTavish encouraged the Plaintiff to council students who were interested in taking the GED test, and McTavish and her staff encouraged more students to take the GED

28

predictor exam.  In order to permit her more time to work with
the additional students to take the GED predictor test, McTavish
reduced the Plaintiff's caseload of mandated students and
reduced the Plaintiff's caseload of mandated students.  The
Defendants also note that Small was hired at West Side High
School to replace the Plaintiff after she retired, and he also
administers the GED predictor test in addition to maintaining a
similar caseload of mandated students.

After articulating their legitimate non-discriminatory
reasons, the Defendants are entitled to summary judgment unless
Plaintiff can point to evidence supporting a finding of
discrimination.  James, 233 F.3d at 154 ("Thus, once the
employer has proffered its nondiscriminatory reason, the
employer will be entitled to summary judgment . . . unless the
plaintiff can point to evidence that reasonably supports a
finding of prohibited discrimination.").  For the Plaintiff to
show that the Defendants' nondiscriminatory reasons are
pretextual, she must show "'both that the reason was false, and
that discrimination was the real reason.'"  Gallo v. Prudential
Residential Servs., L.P., 22 F.3d 1219, 1225 (2d Cir. 1994)
(quoting St. Mary's Honor Ctr., 509 U.S. at 515).  In response
to the Defendants' proffered reasons, the Plaintiff contends
that "jurors may reasonably infer from the available facts, that

29

Plaintiff was subjected to race and age discrimination by virtue of her being pushed out of her guidance counselor position and into that of a mere test administrator in favor of white and younger social workers, who were not verified guidance counselors."

However, the Plaintiff continued to serve in the title of guidance counselor and performed duties consistent with the guidance counselor title.  In addition, Rivers, the second social worker hired by McTavish, whose race is African-American, and who was born in the year 1955, has a large caseload of mandated students for counseling services.  The Plaintiff's subjective belief that she was more qualified to work with mandated students at West Side High School than the clinical social workers employed in the school is insufficient to establish pretext.  See Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001).  The Plaintiff has contended that the hiring of Small, a younger and Caucasian guidance counselor, is indicative of McTavish's preference for a guidance counselor who is white and much younger.  However, the evidence establishes that Small has a caseload of mandated students similar to that of the Plaintiff and continued to administer the GED predictor tests to students at West Side High School.  While the Plaintiff has alleged that McTavish has stated that "we old

30

people should just step back and let them [younger

professionals] take over," the comment is a stray remark, and is

insufficient to establish pretext.  See Fried v. LVI Servs.,

Inc., No. 10 Civ. 9308(JSR), 2011 WL 4633985, at *9 (S.D.N.Y.

Oct. 4, 2011) ("However, stray remarks, even if they occurred as

plaintiff claims, are not enough to satisfy the plaintiff's

burden of proving pretext.  Stray remarks alone do not create an

issue of material fact to defeat summary judgment.").


        As such, even if a prima facie case is assumed, the

Defendants' motion for summary judgment is granted because the

Plaintiff has failed to present evidence that the Defendants'

proffered reasons for the change in Jones' duties are pretext

for an impermissible motivation.


**The ADEA Claims Are Dismissed For Lack Of Economic Loss**


        In addition to the reasons described above, the

Plaintiff's ADEA claims must be dismissed because Jones has

failed to allege any economic loss.  Any ADEA claim where the

plaintiff has been fully compensated during the period of

employment must be dismissed, as the ADEA does not permit a

separate recovery of compensatory damages for pain and suffering

or emotional distress.  See Castro v. City of New York, No. 09

31

Civ. 3754(PAE), 2012 WL 592408, at *1 (S.D.N.Y. Feb. 24, 2012) (collecting cases).  In this case, the Plaintiff has alleged that she was discriminated against on the basis of her age, but has not alleged that she suffered a reduction in pay, or any other monetary losses, as a result of race or age discrimination.  Because the ADEA only permits recovery for back pay, front pay, and liquidated damages, the ADEA claim must be dismissed in its entirety.

**Retaliation Has Not Been Established**

In addition to her allegations of race and age discrimination, the Plaintiff alleges that she was retaliated against for complaining about the discrimination to which she was subjected.  To establish a prima facie case of retaliation under Title VII, the same burden-shifting McDonnell_Douglas framework described above applies, and the plaintiff must first show that she was (1) engaged in an activity protected under anti-discrimination statutes, (2) the defendant was aware of the plaintiff's participation in the protected activity, (3) the defendant took adverse action against the plaintiff based upon his activity, and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the defendant.  See Cosgrove v. Sears, Roebuck & Co., 9 F.3d

32

1033, 1039 (2d Cir. 1993).  Again, as noted above, once the
plaintiff establishes a prima facie case, the burden shifts to
the defendant to establish legitimate, non-retaliatory reasons
for its actions.  Id.  Finally, the plaintiff must then prove
that the proffered reasons are pretext for retaliation.  Cifra
v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (applying
the burden-shifting framework to a Title VII retaliation claim).

       To establish that the Plaintiff suffered an adverse
employment action for the purposes of a retaliation claim, the
Plaintiff must demonstrate that the employment action is
"materially adverse," in that the action is likely to dissuade
"a reasonable worker from making or supporting a charge of
discrimination."  Burlington Northern & Sante Fe Ry. Co. v.
White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).
However, "petty slights or minor annoyances" are not actionable
as claims of retaliation.  See Burlington Northern, 548 U.S. at
68; see also Cody v. County of Nassau, 345 Fed. Appx. 717, 719
(2d Cir. 2009) (holding that "(1) falsely accusing [the
plaintiff] of being absent without authorization, (2)
threatening [the plaintiff] with future counseling notices and
disciplinary actions, (3) writing [the plaintiff] up for leaving
work early, (4) placing [the plaintiff] on a medical review
list, (5) issuing [the plaintiff] a counseling notice while [the

33

plaintiff] was on leave, and (6) engaging in a pattern of
conduct that created a hostile working environment including
altercations" not adverse employment actions for purposes of a
retaliation claim).

The Plaintiff claims that she was subjected to
retaliation for her complaint of discrimination in three ways.
First, the Plaintiff alleges that, after she complained to
Kaplan on February 26 about the younger and less-qualified
social workers intervening with her mandated students, Kaplan
sent an email to both the Plaintiff and McTavish in which Kaplan
falsely claimed that the Plaintiff stated that she offered
aromatherapy treatment to her students, and he chastised Jones
for doing so.  The Plaintiff contends that, during their
February 26 meeting, Kaplan asked Jones about the scent in her
room and the Plaintiff informed Kaplan that the formal name of
the scent was "aromatherapy."  According to the Plaintiff,
"[j]urors will likely be struck by the tone of Kaplan's missive
and its emphasis on matters other than the specifics of
plaintiff's Complaint.  This raises a fair inference of
retaliatory animus."  Second, the Plaintiff alleges that after
she filed her March 2008 complaint with the EEOC, her paycheck
for her work during the summer of 2008 was delayed, resulting in
her incurring excess interest on her credit cards and bills.

34

The Plaintiff contends that this delayed payment was in
retaliation for her complaint.  Finally, the Plaintiff contends
that she was denied summer employment in 2009 notwithstanding
her right to receive a summer position.

As described above, petty slights and minor annoyances
do not constitute retaliation.  With respect to the Plaintiff's
first alleged example of retaliation, the tone of an email is
insufficient to raise retaliatory animus.  With respect to the
Plaintiff's second and third allegations of retaliation, it must
be noted that the Plaintiff acknowledges that she was fully paid
for her work during the summer of 2008 in October 2008 and fully
paid for her work during the summer of 2009 in October 2009.  A
mere delay in receiving a paycheck is not an adverse employment
action sufficient to state a claim of retaliation.  See Rasco v.
BT Radianz, No. 05 Civ. 7147(BSJ), 2009 WL 690986, at *17
(S.D.N.Y. Mar. 17, 2009) ("Courts in this Circuit have held that
a delay in transmitting a paycheck is not a materially adverse
action under Title VII."); Sprott v. Franco, No. 94 Civ.
3818(PKL), 1997 WL 79813, at *13 n.5 (S.D.N.Y. Feb. 25, 1997)
("Plaintiff has not argued, nor could she successfully argue
that the paycheck incident was an adverse employment action. . .
. Any delay in receiving the paycheck was a mere inconvenience
to plaintiff.").

35

Additionally, the Plaintiff offers no direct evidence
that the delay the Plaintiff experienced in receiving her 2008
summer pay was related to her filing a complaint of employment
discrimination.[1]  Instead, the Plaintiff relies upon the temporal
proximity of her protected activity (filing the complaint with
the EEOC in March 2008) and her alleged adverse employment
action (failing to receive pay in a timely fashion for summer
2008 work).  This temporal relationship, however, is
insufficient.  When a plaintiff attempts to establish a causal
connection through temporal proximity alone, the temporal
relationship between the protected activity and adverse action
must be "very close."  See Clark County Sch. Dist. v. Breeden,
532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001);
Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990)
(finding a period of three to four months insufficiently
proximate to support claim).  District courts in this circuit

---

[1]    With respect to the delay in her summer 2009 payment, the
Plaintiff offers no factual support concerning her allegations
of retaliatory animus, instead connecting the retaliatory motive
for the 2008 delayed payment with the 2009 delayed payment.  See
Pl.'s Memo. at 24 ("As proof positive that this was not some
administrative fluke, plaintiff was subjected to similar
mistreatment the following summer. . . [O]nce again, plaintiff
was not paid for the summer 2009 school session until October of
2009, once again causing excessive interests on her credit cards
and bills.").

consistently have found that an intervening period of more than
two to three months is insufficient to establish a causal
connection through temporal proximity alone.  See Ragin v. E.
Ramapo Cent. Sch. Dist., No. 05 Civ. 6496(PGG), 2010 WL 1326779,
at *24 (S.D.N.Y. Mar. 31, 2010) (collecting cases and noting
that although the Second Circuit has not drawn a bright line to
define the outer limits for causality based on temporal
proximity, "many courts in this circuit have held that periods
of two months or more defeat an inference of causation").  Here,
the Plaintiff filed a discrimination complaint on March 30,
2008, and was not paid for summer school in July 2008, four
months after the Plaintiff's protected activity.

Even if it is assumed that the Plaintiff has offered a
prima facie case of retaliation, the Defendants have proffered
an explanation for the delay in payment that is not based in
retaliatory animus.  McTavish has stated that she does not
utilize counseling services during summer school, instead
choosing to allocate school resources to hiring teachers and as
few administrative support positions as possible.  As such, West
Side High School did not have vacancies for the position of
guidance counselor or social worker for the summer of 2008.
However, McTavish was informed that the Plaintiff had retention
rights to work per session during the summer.  Retention rights

37

are defined by regulation, and when an employee has retention

rights in a particular activity, the employee must be assigned

to work for the entire duration of the activity.  McTavish was

informed that the Plaintiff was directed to report to West Side

High School because of her retention rights and that the

Plaintiff would be paid from a source other than West Side High

School's budget.

As further evidence of the Defendants' legitimate

explanation, the Defendants highlight an email the Plaintiff

wrote dated July 29, 2008, to Lauren Lewis in BOE's Central

Human Resources Department stating, in part:

> You called me on July 2, [20]08 and told me by
> voicemail and followed by an email confirmation to
> report to [West Side High School] for my summer
> assignment.  I did on report July 2, [20]08.  However,
> today the payroll secretary Barnard MCGlockling (who
> also email you with the question who will pay my
> summer pay 7/21/08?) inform me checking the computer
> system there is no paycheck for me.  I would like to
> know if your office has paid me for July 1, 08 to July
> 15, 08.

In response to the Plaintiff's July 29, 2008 email,

Lewis sent an e-mail: "Hello. I have check the summer school

system to see if you responded in time.  You did not. Please

call me to discuss this matter."  The Plaintiff's union filed a

38

grievance regarding Jones' per session pay for summer school in 2008, which McTavish supported by stating at the grievance hearing that she believed the Plaintiff should be paid for the entire summer.  The Plaintiff was ultimately paid in October 2008.

The Plaintiff has failed to present any evidence establishing that the Defendants' reasons were pretextual or used to hide retaliatory animus.  Because the Plaintiff cannot produce anything other than her own feelings and speculations that she was retaliated against, the Plaintiff's claims concerning the retaliation she allegedly suffered are dismissed. See Curtis v. Airborne Freight Corp., 87 F. Supp. 2d 234, 249 n.20 (S.D.N.Y. 2000) (noting that conclusory and speculative allegations of racial animus are insufficient to create an issue of fact).

**A Due Process Violation Has Not Been Established**

Finally, although the Plaintiff contends that the duty of administering GED testing violates the applicable collective bargaining agreement and deprives the Plaintiff of "due process and equal protection under the law," the Plaintiff has failed to allege facts sufficient to state a claim.  The evidence

39

establishes that the Plaintiff never lost her salary or her
license and, as such, was never deprived of a property interest.
See O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005) ("To
determine whether a plaintiff was deprived of property without
due process of law in violation of the Fourteenth Amendment, we
must first identify the property interest involved.").  To the
extent the Plaintiff was unhappy about her assignment, the
collective bargaining agreement provided the process that Jones
was owed, and the Plaintiff has failed to exhaust her
administrative remedies.

      Moreover, the Plaintiff had an adequate post-
deprivation remedy in the form of an Article 78 proceeding in
the event the Plaintiff believed that the process was somehow
inadequate.  See Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir.
1984) ("Where, as here, Article 78 gave the employee a
meaningful opportunity to challenge the voluntariness of his
resignation, he was not deprived of due process simply because
he failed to avail himself of the opportunity."); Cronin v. St.
Lawrence, No. 08-CV-6346, 2009 WL 2391861, at *7 (S.D.N.Y. Aug.
5, 2009) ("because Plaintiff could have challenged his
constructive termination in an Article 78 proceeding, Plaintiff
has failed to state a claim for denial of due process.").  The
Plaintiff, however, failed to avail herself of this remedy.

In opposition, the Plaintiff contends that she was deprived of her property interest in her position as a guidance counselor.  Given that the Plaintiff resigned her position, such a claim can be construed as a constructive discharge claim in which a plaintiff must demonstrate that her working conditions are "intolerable," meaning that a "'reasonable person in [plaintiff's] position would have felt compelled to resign.'" Benson v. N.Y. City Bd. of Educ., No. 02-CV-4756(NGG)(RML), 2006 WL 2853877, at *9 (E.D.N.Y. Sept. 29, 2006) (citing Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 n.9 (2d Cir. 2006).

However, a change in job duties, without alleging an intolerable work environment, cannot be grounds for an allegation of constructive discharge.  See Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993) ("A constructive discharge generally cannot be established, however, simply through evidence that an employee was dissatisfied with the nature of his assignments."); Garrett v. Mazza, No. 97 Civ. 9148(BSJ), 2005 WL 2094955, at *3 (S.D.N.Y. Aug. 30, 2005) ("A claim of constructive discharge must be dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer that the employer deliberately created working

41

conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.") (citations omitted).  Because the Plaintiff has failed to present evidence demonstrating an intolerable work environment, her due process claim is dismissed.

**Conclusion**

Based on the facts and conclusions set forth above, the Defendants' motion for summary judgment is granted and the Plaintiff's Amended Complaint is dismissed.

It is so ordered.

**New York, NY**
**March 30 , 2012**

ROBERT W. SWEET
U.S.D.J.

42